UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number:  06-61792-CIV-COHN

MVISIBLE TECHNOLOGIES, INC.
a Delaware corporation,                                        Magistrate Judge Snow

      Plaintiff,

          v.

MIXXER, INC., a Delaware corporation,
and VANTAGEPOINT MOBILE, INC.,
a Delaware corporation,

      Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTIONS FOR LIMITED JURISDICTIONAL DISCOVERY AND TO STAY DISCOVERY

THIS CAUSE came before the Court on Defendants' Motion to Dismiss Complaint

for Lack of Personal Jurisdiction [DE 12], Plaintiff's Motion for Limited Jurisdictional

Discovery [DE 17], and Defendants' Motion to Stay Discovery [DE 21].  The Court has

reviewed the motions, responses and replies thereto, and is otherwise fully advised in

the premises.

## I.  BACKGROUND

Mvisible Technologies, Inc. ("Mvisible" or "Plaintiff") filed this action on November

29, 2006, in the Southern District of Florida against Mixxer, Inc. and VantagePoint

Mobile, Inc. ("Mixxer" or "Defendants")[1] for trademark infringement, trademark dilution,

cybersquatting, and unfair or deceptive practices under federal and state law.  Mvisible

and Mixxer are competitors in the business of providing musical content for mobile

devices, particularly cellular telephones.  Mvisible is based in Florida, while Mixxer is an

internet-based company headquartered in Seattle, Washington.  On February 5, 2007,

_____

[1]  VantagePoint Mobile, Inc. changed its name to Mixxer, Inc. on May 12, 2006,
so these Defendants are now one entity.

Defendants moved to dismiss this action for lack of personal jurisdiction in Florida. Plaintiff opposed the motion and moved for limited jurisdictional discovery. Defendants opposed that motion and moved to stay discovery. The motions became ripe on March 5, 2007.

In support of its motion to dismiss, Defendants have put forth the sworn affidavit of its Chief Executive Officer, John Dearborn [DE 13]. In that affidavit, Dearborn states that Mixxer has not had any physical presence of any kind in Florida, except that it leases one of its twenty-seven (27) computer servers in Florida. Affidavit of John Dearborn, § 28. Mixxer has no property, bank accounts, stores, investments, warehouses, employees, investors, or partners in Florida. Id., §§ 10-17. Mixxer does not solicit business via television or radio, nor purchase advertising space in any florida newspaper. Id., §§18-19. Mixxer does not solicit non-members by email or telephone in Florida. Id., § 21. Website traffic to Mixxer's website from Florida accounts for 6% of its total traffic in 2006. Id., § 25. Mixxer paid a total of $121 in 2006 in royalty payments to music publishers located in Florida, which represents 0.006% of its total royalty payments. Id., § 26. Mixxer's Terms of Use which govern these website transactions with persons in Florida contains a forum selection clause stating that the user consents to exclusive jurisdiction and venue in King County, Washington. Id., §§ 22-24; Exhibit 1 to Dearborn Affidavit [DE 13-2]. Other than a declaration confirming that a Florida resident can engage in transactions on Mixxer's website from Florida, Plaintiff has not put forth any further information, though it seeks discovery on the jurisdiction issue. See Declaration of Darren S. Chiappetta, Exhibit 1 to Plaintiff's

Opposition to Defendants' Motion to Dismiss [DE 27].[2]

## II.  DISCUSSION

The Court has reviewed and researched both the underlying personal jurisdiction issues as well as the issue of allowing jurisdictional discovery.  The Court will more fully address the personal jurisdiction issues in a later order, but upon review of the few United States Circuit Courts of Appeal opinions and the many, but conflicting District Court opinions, the underlying decision on personal jurisdiction in this case is a very close issue.   Under the Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa.1997) analysis, which has been adopted by most Circuit Courts and the District Courts in Florida that have addressed the issue, Mixxer's website in this case is clearly an interactive, commercial website.[3]  However, there are few, if any, cases that actually find such a website subject to personal jurisdiction in any state in which some of its customers complete transactions.  Following that logic, any website that allows completion of transactions would be subject to personal jurisdiction in all fifty states.  That conclusion may or may not be where the law in this country is headed, particularly in situations where the website operator has included a forum selection clause.

Turning back to the threshold issue of limited discovery on the personal

_____

[2]  The Chiapetta declaration also states that a job advertisement from Mixxer was found on a website targetted to Florida residents.  Chiappetta Declaration at § 19.

[3]  See e.g., Pebble Beach v. Caddy, 453 F.3d 1151, 1156-57 (9th Cir. 2006); Jennings v. AC Hydraulic A/S, 383 F.3d 546,  549 (7th Cir. 2004); Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 401 (4th Cir. 2003); Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 483 (6th Cir. 2003); Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002); Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 513, (D.C. Cir. 2002); Instabook Corporation v. Instantpublisher.com, -- F.Supp.2d --, 2006 WL 3909716 (M.D.Fla. Dec. 18, 2006); Alternate Energy Corp. v. Redstone, 328 F.Supp.2d 1379, 1382-83 (S.D.Fla. 2004); Miller v. Berman, 289 F.Supp.2d 1327, 1335-36 (M.D.Fla. 2003);

jurisdiction issue, the Dearborn Affidavit does answer many of the relevant questions regarding Mixxer's Florida contacts.   Defendants oppose the motion for discovery on the grounds that Plaintiff "has made no showing how the requested discovery would bolster its contentions that personal jurisdiction is appropriate," citing to Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 403 (4th Cir. 2003) and Instabook Corporation v. Instantpublisher.com, -- F.Supp.2d –, 2006 WL 3909716, *8 (M.D.Fla. Dec. 18, 2006).  Plaintiff asserts that its "preliminary investigation" reveals additional contacts beyond the Dearborn affidavit, including that Defendants enter into contracts on a regular basis with Florida residents; Defendants' website includes a toll-free telephone number "inviting" residents to contact them, Defendants have placed a job advertisement on a website directed to Florida residents; and Defendants' website "features" music artists from Florida.

In reply, Defendants submit an affidavit from its professional recruiter, Aimee Cook, explaining that the job advertisement was not posted on a Florida website, but was copied from a national website by some other party onto the "miamiphp.org" cite. Declaration of Aimee Cook [DE 29].  A close examination of Plaintiff's own exhibit of the actual job announcement confirms that the notice was posted at www.phparch.com. Exhibit F to Chiappetta Declaration.

The Court also notes that the fact that Florida residents enter into contracts with Defendants by purchasing their downloadable content from their website and that Florida artists are present on Defendants' website are already admitted facts in this case.  Discovery is not necessary to establish these contacts.

However, a few additional facts are required before the Court can rule on the motion to dismiss.   Moreover, the Eleventh Circuit recognizes a limited right to

jurisdictional discovery.   <u>Posner v. Essex Ins. Co., Ltd.</u>, 178 F.3d 1209, 1214, n.7 (11th Cir. 1999), *citing* <u>Eaton v. Dorchester Development, Inc.</u>, 692 F.2d 727, 729-30 (11th Cir. 1982).  In this case, Plaintiff's request for additional discovery related to the eight areas listed at page 4 of their Motion [DE 17] is overbroad.  The Dearborn affidavit already discloses the existence of a leased server in Florida, and that there are no general marketing or advertising on radio, television, or newspaper directed at Florida residents.  Plaintiff is not entitled to learn who Defendants' Florida customers and content providers are, nor further details regarding the Florida server, particularly where Plaintiff and Defendants are direct competitors in a growing niche industry.

Plaintiff's requests are relevant to a certain degree.  Defendants should have to reveal the total revenue they derive from Florida customers.  This fact is relevant to the determination of whether Defendants have minimum contacts with Florida.  A related fact which Defendants may reveal at their discretion is what percentage of their total revenue comes from Florida.  While Defendants disclose that 6% of website **visitors** are from Florida, in line with the percentage of the general population of the United States from Florida, the amount of revenue derived from Florida is not necessarily also 6%.[4]  In addition to Florida-derived revenue, Defendants must reveal whether and to what extent officers and/or employees have traveled to Florida for trade shows or other business functions,[5] how often Defendants communicate with their Florida members by any

_____

[4]  The Court allows Defendants to reveal the percentage information at their discretion as this figure would in turn reveal their total national revenue, possibly a number that is a trade secret if Defendants are privately held.  It may be to Defendants' benefit in the jurisdictional decision if the percentage is less than 5-6%, but the Court will not mandate such disclosure.

[5]  The report by Plaintiff that Defendants' CEO traveled to Florida in an attempt to resolve this case is not considered by this Court as it was presumably an attempt to settle this action initiated by Plaintiff.

means, electronic or otherwise, and any contracts with Florida businesses (other than direct customers purchasing content or subscribing to the website service).

### III.  CONCLUSION

Therefore, before deciding the underlying jurisdictional issue, the Court hereby directs the following interrogatories to Defendants:

1) How much gross revenue in 2006 and 2005 did Defendants receive from Florida sources, including Florida residents purchasing downloads or a subscription to the mixxer.com website?

2) Have any officers, directors, employees or other agents traveled to Florida for trade shows or any other business functions since January 1, 2004?  If yes, when did each trip take place, what purpose was the trip for, how many days did each trip last, and how many representatives traveled at that time to Florida?

3) How often and by what means do Defendants communicate with their Florida customers/subscribers?

4) Since January 1, 2004, and up until the date of the answer to these interrogatories, have Defendants had any contracts with any Florida businesses (other than direct customers purchasing content or subscribing to the website service)?

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      Plaintiff's Motion for Limited Jurisdictional Discovery [DE 17] and Defendants' Motion to Stay Discovery [DE 21] are hereby **GRANTED in part**, and **DENIED in part** as described above;

2.      By March 30, 2007, Defendant shall provide a written response to the above interrogatories to the Court and to Plaintiff;

3.      By April 9, 2007, Plaintiff may file a ten (10) page supplemental memorandum in

opposition to the motion to dismiss based upon the additional discovery;

4.      By April 16, Defendants may file a seven (7) page supplemental reply

memorandum.

        **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 15th day of March, 2007.

JAMES I. COHN
United States District Judge

Copies to:

Counsel as listed on CM/ECF docket